UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTINE MOSLEY } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:17-CV-00169-RDP |
| } | |
| CAROLYN W. COLVIN, Acting } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

# MEMORANDUM DECISION

Plaintiff Christine Mosley ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. *See* 42 U.S.C. §§ 405(g) and 1383(a).

## I.    Proceedings Below

Plaintiff filed her application for Social Security Disability (SSD) benefits on September 11, 2013 and for SSI on January 31, 2014. (R. 172, 174). In both applications Plaintiff alleged that her disability began on May 31, 2013. (*Id.*). Both Plaintiff's SSD and SSI applications were initially denied by the Social Security Administration ("SSA") on April 10, 2014. (R. 110, 117). Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") J. L. Munford on November 9, 2015. (R. 36, 108, 131). In his decision, dated January 27, 2016, the ALJ determined that Plaintiff had not been under disability within the meaning of § 1614(a)(3)(A) of the Act since September 11, 2013, the date the application was filed. (R. 17-30). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (R. 1), the ALJ's

decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

**II.     Facts**

Plaintiff, twenty-five (25) years old at the time of the administrative hearing, has formal education consisting of a high school diploma, some college courses, and a course in "patient care assistance." (R. 42, 51). Her previous work experience, which ended in approximately May or June 2013, includes employment characterized as "caregiver" and "patient care assistant." (R. 52, 57 – 58). Plaintiff alleges she is unable to work because of chronic, debilitating nausea and vomiting resulting from gastroparesis[1] and migraines. (R. 42). Plaintiff's alleged onset date for disability is May 31, 2013. (R. 42). During her alleged period of disability, Plaintiff received treatment from multiple in-state and out-of-state medical facilities. (R. 278-1481, 1490-1660, 1669-2178).

By way of background, Plaintiff is an obese female who has been seen by multiple medical doctors for treatment relating to, *inter alia*, gastroparesis, gastroesophageal reflux disease (GERD),[2] migraine headaches, depression, anxiety, and obesity. Plaintiff's medical history includes, *inter alia*, a laparoscopic fundoplication[3] (with prolonged postop nasogastric feedings[4])

---

[1] "Weakness of gastric peristalsis, which results in delayed emptying of the bowels." *Gastroparesis*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

[2] "[A] syndrome due to structural or functional incompetence of the lower esophageal sphincter (LES), which permits retrograde flow of acidic gastric juice into the esophagus." *Gastroesophageal reflux disease (GERD)*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

[3] "Suture of the fundus of the stomach completely or partially around the gastroesophageal junction to treat [GERD]; can be performed by open abdominal or thoracic operation, or a laparoscopic approach." *Fundoplication*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

[4] The act of providing nourishment via a tube inserted into the stomach through the nose. U.S. Dept. of Health and Human Servs., *Nasogastric Feeding Tube*, MEDICAL ENCYCLOPEDIA (Review Date Dec. 8, 2016), https://medlineplus.gov/ency/patientinstructions/000182.htm.

and cholecystectomy[5] in 2006, and a laparoscopic placement of gastric electric stimulator in April 2015. (R. 1579). As a possible result of these operations, Plaintiff has suffered from a history of nondiabetic gastroparesis. (R. 1582). Additionally, Plaintiff weighed 225 pounds, with a body mass index (BMI) of 32.3, in January 2013 and 215 pounds, with a BMI of 31.8, in April 2015. (R. 1171, 1579). Because Plaintiff has a body mass index greater than 30, she is classified as obese. (R. 1171, 1579).

Plaintiff was hospitalized for treatment related to her nausea and vomiting in July 2013; during which time Dr. Halama performed an esophagogastroduodenoscopy[6] (EGD) with biopsy. (R. 1563-64). Following this procedure, Dr. Halama noted, "[n]o abnormalities were seen on today's study to suggest a cause for [Plaintiff's] symptoms." (R. 1563). During her hospital stay, Plaintiff's complaints of either nervousness, anxiety, or depression were inconsistent, as she complains of these symptoms on July 17, 2013, but denies them on the following day, July 18, 2013. (R. 1558-61). Plaintiff was hospitalized a second time in July 2013, again for chronic nausea. During that stay she underwent a CT scan of her abdomen and pelvis, which showed "a number of colonic diverticula[7] are present without evidence of diverticulitis."[8] (R. 1547). Following her discharge on August 2, 2013, Plaintiff received treatment from a gastroenterologist. (R. 1172-1187). Plaintiff presented to the ER again on August 3, 2013, one day after being

---

[5] "Surgical removal of the gallbladder." *Cholecystectomy*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

[6] "Endoscopic examination of the esophagus, stomach, and duodenum usually performed using a fiberoptic instrument." *Esophagogastroduodenoscopy*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

[7] "[H]erniations of mucosa and submucosa through or between fibers of the major muscle layer (muscularis propria) of the colon." *Diverticula of colon*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

[8] "Inflammation of a diverticulum, especially of the small pockets in the wall of the colon which fill with stagnant fecal material and become inflamed. . . ." *Diverticulitis*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

released, complaining of mental health issues and exhibited signs she had overused her medications, which she has a history of doing, and left the hospital against medical advice. (R. 1544). Plaintiff attended a follow-up appointment with Dr. Craig Philpot, a gastroenterologist, in September 2013, at which time Plaintiff reported that her symptoms were much improved, and she had not experienced any nausea, vomiting, abdominal pain, or weight loss. (R. 1474). Dr. Philpot's examination of Plaintiff showed that her bowel sounds were normal with no hepatosplenomegaly, tenderness, distention, or abdominal masses. (R. 1474).

In October 2014, Plaintiff was referred to Dr. William Palmer, a gastroenterologist at the Mayo Clinic, again reporting nausea and gastroparesis, and stating "the only thing that she is able to tolerate are specifically foods like a fast food burger." (R. 1889-90). Dr. Palmer's examination revealed a non-distended abdomen with positive bowel sounds and no organomegaly, and faint pain on deep palpation. (R. 1891). Dr. Palmer noted that a repeat gastric emptying study, multiple CT scans of the abdomen and pelvis, an ultrasound of the abdomen, an Endoscopic Retrograde Cholangiopancreatography[9] (ERCP), and multiple colonoscopies were all within normal limits. (R. 1891-92). Dr. Palmer ordered an esophagus x-ray with barium tablet and stomach x-ray, which returned normal results, with "no narrowings," "strictures," or "abnormalities to explain symptoms." (R. 1893). Additionally, multiple EGD's have returned unremarkable results. (R. 1419).

Plaintiff also testified to having migraines which prevent her from working. (R. 42). Medical records show that early in 2014 Plaintiff consulted a neurologist at Norwood Neurology for her headaches and was prescribed Topamax during her first visit. (R. 1480-81). During a

---

[9] "[A] method of cholangiopancreatography using an endoscope to inspect and cannulate the ampulla of Vater, with injection of contrast medium for radiographic examination of the pancreatic, hepatic, and common bile ducts." *Endoscopic Retrograde Cholangiopancreatography*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

4

follow-up visit in March 2014, Plaintiff reported improvement in the frequency of her headaches, and the neurologist increased her dosage of Topamax and planned to see Plaintiff for a follow-up in one month. (R. 1479). However, Plaintiff's records from Norwood Neurology indicate she did not follow-up as directed. (R. 1478-1481). Further, although Plaintiff has seen her gastroenterologist multiple times since her last appointment with her neurologist in March 2014, Plaintiff has not reported headaches at any of these appointments. (R. 1584-1643).

In support of Plaintiff's condition, her mother Adrienne Mosley ("Mrs. Mosley") submitted a "Function Report – Adult Third Party." (R. 228-35). In this report, Mrs. Mosley states that "most of [Plaintiff's] day is spent in bed. She suffers from chronic nausea, abdominal pain as well as anxiety, depression, and migraines. Some of the medicine she takes makes her unable to function." (R. 228). However, the ALJ found Mrs. Moseley's testimony not entirely credible because it is contradicted by the medical evidence. (R. 27).

Additionally, Plaintiff was evaluated by a state agency medical consultant. (R. 86-107). This evaluation included both a physical examination and a psychological examination. (*Id.*). The ALJ found that the consultant's physical assessment was "consistent with the claimant's treatment history, imaging reports, and physical examination findings." (R. 27). However, the ALJ discounted the consultant's psychological assessment because the ALJ found "it was unsupported by the claimant's treatment history, mental status examinations findings, and reported activities of daily living." (*Id.*).

The ALJ concluded, "[b]ased on the claimant's reported activities of daily living, treatment history, imaging reports, and physical and mental status examinations findings . . . that the claimant can perform medium work with [the] additional nonexertional limitations" described in the residual functional capacity ("RFC") assessment. (*Id.*). Following this conclusion, the ALJ

5

determined that based on "the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 28).

### III. ALJ Decision

The ALJ applied the five-step test. He first determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of May 31, 2013, through her date last insured of March 31, 2015. (R. 20). Second, the ALJ determined that Plaintiff had the following "severe," medically determinable impairments: gastroparesis, gastroesophageal reflux disease (GERD), obesity, and migraine headaches. (R. 20). However, the ALJ determined Plaintiff's pulmonary embolism, leukocytosis,[10] anemia, and dysmenorrhea[11] were not "severe" disabling impairments. (R. 20). Additionally, although Plaintiff testified to suffering from anxiety and depression, the ALJ determined these mental impairments did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (R. 21, 50). The ALJ evaluated the evidence while considering the four broad functional areas set out in section 11.00(G)(3)(b), i.e. daily activities, social functioning, concentration, persistence or pace, and adapting and managing; and what evidence is needed to evaluate a Plaintiff's mental disorder set out in section 12.00C of the Listing of Impairment (20 C.F.R., Part 404, Subpart P, Appendix 1, Part A2.). (R. 21).

Having found at least one severe impairment, the ALJ correctly proceeded to the third step in the five-step analysis. Based on his analysis at step three, the ALJ determined Plaintiff "does

---

[10] "An abnormally large number of leukocytes, as observed in acute infections, inflammation, hemorrhage, and other conditions." *Leukocytosis*, <u>Stedman's Medical Dictionary</u>, Westlaw (database updated Nov. 2014).

[11] "Difficult and painful menstruation." *Dysmenorrhea*, <u>Stedman's Medical Dictionary</u>, Westlaw (database updated Nov. 2014).

6

not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 23). Because the ALJ determined that none of Plaintiff's impairments meet or medically equal the criteria of any listed impairment, the ALJ continued to step four.

At step four, the ALJ determined that Plaintiff has a RFC to perform medium work, "except that she cannot drive a motor vehicle or operate hazardous machinery and should avoid all exposure to unprotected heights." (R. 23-24). Analyzing Plaintiff's RFC in conjunction with her prior work history, the ALJ determined that she did not have the RFC necessary to perform any past relevant work. (R. 28). Thus, the ALJ correctly proceeded to the fifth and final step. Relying on the testimony of a vocational expert (VE), and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs in significant numbers in the national economy which Plaintiff can perform. (R. 28). Based on these determinations, the ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and therefore, is not disabled.

### IV. Plaintiff's Argument for Remand or Reversal

Plaintiff alleges that the ALJ failed to "follow the 'slight abnormality' standard in finding that Plaintiff's depression and anxiety are non-severe" and failed to properly apply the Eleventh Circuit pain standard to the facts of this case. (Pl. Br., Doc. #9 at 5-12).

### V. Standard of Review

The only issues before the court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings

7

are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Legal Standard

### A. Five-Step Test

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether Plaintiff engages in "substantial gainful activity" ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). An individual engages in SGA if he engages in "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for "pay or profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that Plaintiff engages in substantial gainful activity, then she cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine the severity of any medically determinable physical or mental impairment or a combination of medical impairments. 20 C.F.R. § 404.1520(a)(4)(ii).

Absent a severe impairment, Plaintiff may not claim disability. *Id.* Third, the ALJ must determine whether Plaintiff's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If Plaintiff's impairments meet such criteria, Plaintiff is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

However, if Plaintiff does not meet the disability requirements under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine Plaintiff's RFC, which refers to Plaintiff's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether Plaintiff has the RFC to perform past relevant work; if the answer is yes, then Plaintiff is deemed not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the ALJ finds that Plaintiff is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the final part of the analysis, the ALJ must determine whether Plaintiff is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g).

Within the five-step test, Plaintiff has the burden of proving the first three steps, namely that (1) she is not engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, and (3) her impairment or impairments meet or exceed the criteria in the Listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If Plaintiff cannot prove that she has a listed impairment, she must prove alternatively that she is unable to perform her previous work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); see also *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). Once Plaintiff shows that she cannot perform her previous work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones*, 190 F.3d at 1228.

## B. Eleventh Circuit Subjective Pain/Symptom Standard and Determining RFC

If Plaintiff alleges disability based on subjective symptoms, which are not listed impairments, the ALJ is required to apply the Eleventh Circuit pain standard to determine whether Plaintiff is disabled by her symptoms and, by extension, is unable to perform her previous work. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The relevant pain standard requires:

> (1) evidence of an underlying medical condition *and either*
> (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or*,
> (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (emphasis added). While a reversal is warranted if the ALJ's decision contains no evidence of the proper application of the three-part pain standard, the ALJ need not have recite the pain standard word-for-word. *Id*. Instead, the ALJ may make findings indicating the application of the standard. *Id*.

Concurrent with the Eleventh Circuit pain inquiry, the ALJ must determine Plaintiff's RFC to return to past relevant work or, alternatively, to perform any other work within the economy. 20 C.F.R. § 404.1520(a)(4)(iv)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). Regulations define RFC, generally, as the level of activity in which an individual may still engage despite the limitations of his or her impairments. See 20 C.F.R. § 404.1545(a). In determining Plaintiff's RFC, the ALJ is compelled to evaluate both "relevant medical evidence" and "descriptions and observations of [the claimant's] limitations." 20 C.F.R. § 404.1454(a)(3). The ALJ must use this evidence to "identify [the claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." SSR 96–8p, 1996 WL 374184 (Jul. 2, 1996). Specifically, the ALJ should assess Plaintiff's work-related physical abilities, mental abilities, and other abilities affected by the impairments. *Id*. (citing 20 C.F.R. §§

404.1545(b)-(d), 416.945(b)-(d)). Based on the function-by-function analysis, the ALJ then determines Plaintiff's RFC on a five-point Likert scale, the metrics of which are expressed in terms of exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

When applying the pain standard and determining Plaintiff's RFC, the ALJ must give considerable weight to a treating physician's opinion. *See Crawford v. Comm'r*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). If the evidence obtained from a treating physician is inadequate to sufficiently perform the pain standard and RFC inquiries, the ALJ may contact the treating physician for clarification or additional evidence. See 20 C.F.R. § 416.920b(b). A request for additional evidence from a physician is appropriate only in the limited circumstances where (1) "the report from [the] medical source contains a conflict or ambiguity that must be resolved," (2) "the report does not contain all the necessary information," or (3) the report "does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Shaw v. Astrue*, 392 F. App'x 684, 688 (11th Cir. 2010).

When the body of reports is collectively adequate, however, "the [ALJ] may reject any medical opinion," including a treating physician's, "if the evidence supports a contrary finding." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Of course, the ALJ must articulate specific reasons for rejecting the treating physician's opinion. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). If, in the final analysis, the ALJ determines that Plaintiff retains the capacity to return to her previous work or to perform any other work within the economy, he must conclude that Plaintiff is not disabled. If, on the other hand, the ALJ determines that Plaintiff lacks the RFC to adjust to any level of gainful employment, the ALJ should conclude that Plaintiff is disabled.

## VII. Discussion

### A. The ALJ's Classification of Plaintiff's Anxiety and Depression as "Non-Severe" is Supported by Substantial Evidence.

Under the five-step approach, "[s]tep two is a threshold inquiry," allowing a classification of non-severe for only slight, or trivial impairments which "would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Step two of the test "acts as a filter," and requires only that Plaintiff establish at least one severe impairment. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Thus, "if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment, is enough to satisfy the requirement of step two." *Id.*

As the Eleventh Circuit has stated, "nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1991)). It is only necessary for the ALJ to find one severe impairment at step two, because step three requires the ALJ to consider the combination of all Plaintiff's impairments, regardless of whether they are considered severe or not. *Id.* (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)). Furthermore, *Heatly* also states, "[e]ven if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires." *Heatly*, 382 F. App'x at 824-25. Moreover, the court in *Delia v. Commissioner of Social Security*, 433 F. App'x 885 (11th Cir. 2011), determined that although the ALJ erred in determining that Plaintiff's mental impairments were not severe, this error was harmless "[b]ecause the ALJ gave full consideration

to the consequences of [Plaintiff's] mental impairments on his ability to work at later stages of the analysis." *Id*. at 887.

In the present case, although the record contains medical evidence of Plaintiff's alleged anxiety and depression, the ALJ determined these impairments were not severe. (R. 20-21). During the ALJ's analysis regarding the severity of Plaintiff's impairments of depression and anxiety, (R. 21), the ALJ used the "special technique" prescribed by the Psychiatric Review Technique Form ("PRTF"). 20 C.F.R. § 404.1520(a)-(c)(3-4). The PRFT requires the ALJ to conduct separate evaluations into four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation," *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R § 404.1520(a)-(c)(3-4) (remanding the case because the ALJ failed to complete the PRTF "or comply with [its] mode of analysis")); and rate the degree of limitation in each of these areas using a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R § 404.1520(a)-(c)(4). Following this requirement, the ALJ extensively analyzed each one of the four functional areas separately and determined that Plaintiff's mental impairments "cause[d] no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area." (R. 21-22). Furthermore, the ALJ states, "the following residual functional capacity assessment reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis," (R. 23), and "[b]ased on the claimant's reported activities of daily living, treatment history, imaging reports, and physical and *mental status* examinations findings, the [ALJ] finds that the claimant can perform medium work with additional nonexertional limitations . . . ." (R. 27). Therefore, even if the ALJ in the present case erred in finding that Plaintiff's depression and anxiety are not severe impairments, the error is harmless because the

13

ALJ found at least one severe impairment, satisfying step two, and moved on to step three. (R. 20, 23).

### B. It is Not Clear on the Record Whether the ALJ Considered the Combined Effects of All Impairments.

Although the ALJ provided a detailed and thorough decision (in which it is clear he fully analyzed the severity of Plaintiff's mental impairments) it is unclear whether, at step three of the analysis, the ALJ considered the combined effects of all impairments in evaluating disability. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) ("The ALJ's failure to consider [the plaintiff's] physical impairments and pain complaints in combination alone requires that the decision be reversed and remanded for reconsideration"). If in fact the ALJ did consider Plaintiff's alleged mental impairments in combination with her physical impairments during his step three analysis, the ALJ should have expressed as part of his discussion of whether Plaintiff's impairments "meet or equal the severity of any sub-section of section 5.00 or any other section contained in Appendix 1." (R. 23). Presently, the ALJ's decision states, "the medical evidence does not contain the objective signs, symptoms or findings, or the degree of functional limitations, necessary for the claimant's *physical impairments*, considered singly or in combination to meet or equal the severity of any" listing. (*Id.* (emphasis added)). Therefore, this section of the ALJ's decision is ambiguous as to whether the ALJ did in fact consider Plaintiff's mental impairments in combination with her physical impairments. (*Id.*). Thus, remand is necessary for the limited purpose of determining if the ALJ did in fact consider Plaintiff's physical *and* mental impairments in combination during his determination of disability at step three. Nevertheless, the court will consider Plaintiff's second ground for reversal in the interest of completeness.

14

### C. The ALJ Properly Discussed and Applied the Application of the Eleventh Circuit Pain Standard.

When, as here, Plaintiff alleges disability through subjective complaints of pain and other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: "(1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the claimed pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also* 20 C.F.R. § 404.1529. A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt*, 921 F.2d at 1223. Thus, "if a claimant testifies to disabling pain and satisfies the three-part pain standard, the ALJ must find a disability *unless* the ALJ properly discredits the claimant's testimony." *Crow v. Colvin*, 36 F. Supp. 3d 1255, 1259 (N.D. Ala. July 28, 2014) (emphasis added). That is to say, "[a]fter considering a claimant's complaints of pain, an ALJ may then reject them as not creditable." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). During this assessment, the ALJ is to consider Plaintiff's testimony and any inconsistency between the testimony of symptoms and any other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). If the ALJ rejects a plaintiff's testimony regarding pain, the ALJ must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Further, if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The reasons for discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 2007). Thus, although

15

the ALJ's "credibility determination does not need to cite 'particular phrases or formulations,' … it cannot merely be a broad rejection which is not enough to enable the district court . . . to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

In this case, the ALJ properly articulated the pain standard. (R. 25). After determining that evidence exists regarding an underlying medical condition, the ALJ analyzed the intensity, persistence, and functional limiting effects of the symptoms (R. 24-27). The ALJ found that no objective medical evidence supporting the severity of Plaintiff's alleged pain exists and concluded that the statements of both Plaintiff and her mother were not entirely credible. (R. 24-27).

Specifically, the ALJ considered the fact that although "the claimant has undergone numerous studies in an attempt to locate a cause for her alleged symptoms," these studies have generally returned normal results. (R. 26). To this point, in August of 2013 Plaintiff underwent a two-hour gastric emptying study and was diagnosed with gastroparesis. (R. 1890). However, a subsequent gastric emptying study produced normal results. (R. 1891). Further, multiple CT scans of Plaintiff's abdomen and pelvis, Endoscopic Retrograde Cholangiopancreatography "ERCP" testing, and multiple colonoscopies all returned results within normal limits. (R. 1891-92). Additionally, in October 2014, Plaintiff consulted another Gastroenterologist at the Mayo Clinic, who stated: "This does not sound like gastroparesis, especially since she continued to have vomiting while on [total parenteral nutrition[12]] TPN. It is an unlikely diagnosis." (R. 1892). Further, the ALJ notes that Plaintiff alleges she suffers from chronic nausea and vomiting of such a frequency that she is unable to work; however, Plaintiff is "obese, and has not experienced the weight loss that would be expected if her allegations of severe and frequent nausea and vomiting

---

[12] "[N]utrition maintained entirely by central intravenous injection or other nongastrointestinal route." *Total Parenteral Nutrition*, Stedman's Medical Dictionary, Westlaw (database updated Nov. 2014).

16

were true." (R. 26). The medical records support this finding. As noted in the medical records, "[d]espite her GI issues, [Plaintiff] has gained at least 10 pounds in the last 4-6 weeks by her report." (R. 1230). Additionally, despite Plaintiff's alleged chronic nausea, she requested permission from her doctor to ride roller coasters. (R. 1580). Therefore, substantial evidence supports these considerations, and the ALJ was not clearly wrong to discredit Plaintiff's testimony. *See Jerrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (citing *Holt*, 921 F.2d at 1223) (holding that statements concerning the intensity, duration, and limiting effects of Plaintiff's symptoms were not entirely credible because the objective medical evidence did not confirm the severity of the alleged pain arising from that condition); *Werner v. Commissioner*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it.").

The ALJ's decision to discredit Plaintiff's subjective complaints of pain is supported by substantial evidence. Although Plaintiff had certain impairments during the relevant time, substantial evidence indicates that those impairments, or combination thereof, were not severe such that they significantly limited her ability to perform basic work-related activities for twelve consecutive months. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").

## VIII. Conclusion

After carefully reviewing the record, this court finds that ambiguity exists regarding whether the ALJ considered Plaintiff's mental impairments in combination with her physical

impairments at step three of his analysis. Therefore, the ALJ's determination that Plaintiff is not disabled is due to be remanded for further limited action consistent with this opinion.

**DONE** and **ORDERED** this February 15, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE